# United States Court of Appeals
## For the First Circuit

No. 00-2281

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN DAVIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Selya, Boudin, and Lynch, Circuit Judges.

Pamela E. Berman, with whom Schnader Harrison Goldstein & Manello was on brief, for appellant.
Jennifer Hay Zacks, Assistant U.S. Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

May 3, 2001

**LYNCH, Circuit Judge**.  John Davis argues that this is one of those rare instances in which the government should have been compelled to file a motion warranting that a defendant had provided substantial assistance to the government, with the consequence that the district court could then have given Davis a downward departure from the four year maximum sentence he did receive.  See 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1.  It is undisputed that Davis provided assistance to the government in its investigation of other drug traffickers, although he was admittedly reticent about a murder in Boston.  The reason the government refused to file a motion, Davis argues, was to retaliate against him for the successful exercise of his constitutional right to have a speedy trial.

Davis, in fact, was granted dismissal under the Speedy Trial Act (STA) of the first indictment against him, for possession with intent to distribute marijuana and PCP, and conspiracy to commit such crime, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  He was then indicted for a lesser offense, transporting drugs through the mail in violation of 21 U.S.C. § 843(b).  Although in plea negotiations pertaining to the first indictment the government had made various offers to consider

filing a substantial assistance motion, it refused to do so in plea negotiations pertaining to the second indictment. Nonetheless, Davis pled guilty to the second indictment, reserving this sentencing issue for appeal. If the facts were simply as Davis has stated them, this appeal would present a very serious matter. But they are not, and the district court, which handled this matter with great skill, supportably found contrary facts that doom Davis' appeal.

## I.

The detailed facts may be found in the district court's opinion, United States v. Davis, 115 F. Supp. 2d 101 (D. Mass. 2000). We outline only those needed to understand this appeal.

After his arrest on the first indictment in January 1998, Davis cooperated with federal authorities by providing information about buyers and sellers involved in drug trafficking activity and by participating in investigations. In plea negotiations with Davis, the government proposed an agreement in which Davis would plead guilty to the conspiracy count (which had a guideline range of 121-151 months) and would "cooperate fully" with law enforcement agents and "provide complete and truthful information." If Davis complied with

-3-

those terms, the government proposed that it would move to depart from the statutory mandatory minimum based on substantial assistance under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. In a cover letter accompanying the proposed agreement, the government referred to a debriefing session it wished to schedule between Davis and some homicide detectives. The government believed Davis had information about a homicide. Neither party signed the agreement. Davis did meet with homicide detectives but refused to answer any questions.

With new counsel, Davis resumed plea negotiations. Davis continued to refuse to cooperate in the homicide investigation. While the government calls Davis' silence a "major obstacle to a plea agreement," Davis claims that the government was bound to seek a substantial assistance downward departure based on his assistance in the drug trafficking investigations. In any event, it is undisputed that during negotiations the Assistant U.S. Attorney (AUSA) offered to seek the approval of the Substantial Assistance Committee to file a § 5K1.1 motion. The Committee is the body within the U.S. Attorney's office in Massachusetts empowered to authorize such motions. Still, no plea agreement was reached.

-4-

Davis filed a STA motion in January 2000 to dismiss the indictment. Plea negotiations continued apace, with the government repeating its offer to seek internal approval for filing a substantial assistance motion. Pending the outcome of Davis' STA motion, the government obtained the second indictment, charging transportation of drugs through the mail, which carries a four-year maximum sentence. The district court dismissed the original indictment with prejudice under the STA on March 27, 2000.

The government appealed the dismissal of the first indictment and also considered presenting additional charges to the grand jury. During plea negotiations concerning the second indictment, the government told Davis it would no longer consider filing a § 5K1.1 motion. The parties eventually entered into a written agreement, in which Davis pled guilty to the current charge. In exchange the government agreed to forego its appeal of the STA dismissal and its pursuit of additional charges. Because the parties disputed whether the government was obligated to file a § 5K1.1 motion, the agreement reserved Davis' right to raise the issue.

Davis then moved to compel the government to file the motion, claiming that he had provided substantial assistance and that the government was retaliating against him for prevailing on his STA motion. The district court concluded that Davis had made a threshold showing that the government had acted with an impermissible motive in refusing to seek approval of the filing of a § 5K1.1 motion, and the government agreed to submit the matter for the Committee's consideration. The AUSA submitted his and Davis' descriptions of the assistance rendered. The district court approved the government's submission. To ensure the Committee's view of the case was not tainted, the Committee was not told of the STA dispute.

The Committee did not approve the filing of a substantial assistance motion, giving as its reason Davis' refusal to cooperate in the homicide investigation. The court accordingly denied Davis' motion to compel. Davis was sentenced to the statutory maximum of four years' imprisonment.

Particularly pertinent are four of the court's factual findings:

1. The AUSA made only a contingent promise to file a § 5K1.1 motion if it was approved by the Committee.

2.    There is no allegation or evidence that the Committee acted in bad faith or that the stated reason for its refusal to approve the filing of a § 5K1.1 motion is facially inadequate.[1]

3.    There is no evidence that Davis detrimentally relied on the prosecutor's promise to consider filing a § 5K1.1 motion.  By the time Davis entered a plea of guilty pursuant to an agreement, the prosecution had renounced any such promise.

4.  There is no evidence that the AUSA -- with whom the original discussions of a § 5K1.1 motion were held -- tainted the Committee's decision-making with impermissible considerations.

## II.

There are two related doctrines at play in this case. The first is that when the government enters into a plea agreement with a defendant it must undertake the obligations, including discretionary obligations, that it imposes on itself. The plea agreement is analogized to a contract, <u>Santobello</u> v. <u>New York</u>, 404 U.S. 257, 262 (1971), and defendants may seek to

---

[1]    There was no request made for an evidentiary hearing as to the Committee's motivation.

compel performance, see United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000) ("A defendant who has entered into a plea agreement with the government, and himself fulfills that agreement, is entitled to the benefit of his bargain."); United States v. Gonzalez-Sanchez, 825 F.2d 572, 578 (1st Cir. 1987).

The second doctrine is that the government may not use the mechanism of declining to file a substantial assistance motion to carry out unconstitutional purposes, such as retaliating against a defendant for exercising his constitutional rights or unconstitutionally discriminating against a defendant. Nor may the government cloak those unconstitutional purposes from judicial scrutiny by saying that whether it undertakes the filing of a substantial assistance motion is committed to its discretion. As the Supreme Court held in Wade v. United States, 504 U.S. 181 (1992), a federal court has authority to review a prosecutor's refusal to file a substantial assistance motion and to grant a remedy if the court finds that the refusal was based on an unconstitutional motive or was not rationally related to some legitimate governmental end. Id. at 185-86. "[A] defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion,

say, because of the defendant's race or religion." Id. at 186. The Wade rule, unlike the first doctrine, does not depend upon the existence of a plea agreement at all. Indeed, in Wade there was no plea agreement. And so it is possible for the government to violate Wade even if the government never promised that it would file a substantial assistance motion. See United States v. Knights, 968 F.2d 1483, 1486 (2d Cir. 1992).

Thus, as this court said in United States v. Sandoval, 204 F.3d 283, 286 (1st Cir. 2000), the law constrains the government's discretion in two situations: cases where the government's failure to move is based on impermissible factors or is not rationally related to a legitimate governmental end and cases where the government has agreed to an explicit undertaking.[2] The two doctrines have some common points of analysis. Many cases discuss the level of judicial scrutiny the government's decision not to file a substantial assistance motion will undergo. This court has said, at least where there is a plea agreement, that the government's burden is modest,

---

[2] Sandoval rejected an attempt to create a third category where neither of these two situations were alleged. See 204 F.3d at 236.

only one of production, not of persuasion.  United States v.

Alegria, 192 F.3d 179, 187 (1st Cir. 1999).  Wade itself

envisions a low threshold for the government.  Other cases turn

on the adequacy of the government's stated reasons and the need

for further exploration.  United States v. Rounsavall, 128 F.3d

665, 667-68 (8th Cir. 1997); Knights, 968 F.2d at 1485.

This case initially, then, raises the issue under the

first doctrine of whether the government made any promise at all

to pursue a substantial assistance motion.[3]  There was certainly

no obligation ever agreed to by the government to file a motion

before such a filing had been approved by the Committee.  The

district court found that no such promise had been made, and

also that it was doubtful, given the policy of the U.S.

Attorney's office involved that such matters must be approved by

the Committee, that such a promise could have been made with

authority.  The latter issue we need not resolve.

---

[3]  Because Davis says the government initially agreed to
file both a § 5K1.1 motion and a motion under 18 U.S.C. §
3553(e), we do not discuss the different consequences, other
than to note that the combination of motions would have given
the district court the ability to sentence below the statutory
mandatory minimum.  See generally Melendez v. United States, 518
U.S. 120 (1996).

If, giving Davis the benefit of the doubt, the AUSA left an impression that a request for approval to file a substantial assistance motion would at least be considered by the Committee based on Davis' help in the drug investigation, then that promise was kept.[4] For that is exactly what happened, due to the mechanism set up by the district court. The district court also imposed parameters on the Committee's consideration that ensured that its decision did not turn on any unconstitutional motive. The AUSA who had been bested on the STA motion was constrained in the process, after Davis' protestations that the AUSA would poison the well if he were involved, and any Committee members with prior knowledge of the Davis case were removed from the process. Further, the Committee was not told of the STA motion or the dismissal of the first indictment and the court supervised the filing to the

---

[4] In her affidavit, Davis' counsel says she understood that the AUSA offered to "recommend" both the § 5K1.1 motion and a 10- year sentence based on the substantial assistance Davis had already provided. That was under the first indictment charges, under which Davis faced a sentencing range above 10 years.

This case illustrates the need for caution by prosecutors in what they say as to substantial assistance motions during plea negotiations. Appellate counsel for the prosecution is not the attorney whose representations are at issue here.

Committee. Looking at what the government "promised" under the first doctrine, Davis may well have received more than he was entitled in having the Committee consider the matter.

At oral argument Davis contended that the district court erred in finding that there had never been a flat promise to Davis to file a substantial assistance motion. But the record amply supports the district court's conclusion. In the parties' plea negotiations concerning the first indictment, the government's proposed plea agreement left it entirely to the government's discretion whether to file a substantial assistance motion. Davis neither accepted that agreement nor provided any information at the subsequent debriefing with homicide detectives. After Davis obtained new counsel and negotiations resumed, the AUSA offered to seek the approval of the Committee to file a § 5K1.1 motion, along with a recommended 10-year sentence, with respect to the charges in the first indictment. No agreement was reached. The government later offered a standard plea agreement which provided that the government would consider filing a substantial assistance motion. Again, there was no agreement.

When, after the first indictment was dismissed, the parties started to negotiate anew concerning the second indictment, the government told Davis it would not consider filing a § 5K1.1 motion. Nonetheless, Davis decided to plead guilty. In turn, the government agreed to dismiss its appeal from the allowance of the STA motion and not to bring additional charges against Davis. So, at the time Davis pled guilty, it was clear that the government would not file a substantial assistance motion. Accordingly, under the plea as contract doctrine, there was no reliance by Davis.[5]

This brings us to the question, under the second doctrine, whether Davis has made out a Wade violation, regardless of what promises were made. The mere giving of substantial assistance -- and there is no question that Davis did assist the government -- does not itself raise an inference that the government's failure to file a substantial assistance motion was improperly motivated. As said in Wade, the fact that a defendant provided substantial assistance does not provide

_____

[5] We understand the district court's finding of lack of reliance to be made pursuant to Davis' theory that he was entitled to enforcement of the promise made, and not to the independent Wade theory.

defendant with a remedy; at most it creates a situation in which the government is given the power, but not the duty, to file a substantial assistance motion. <u>Wade</u>, 504 U.S. at 185. After the district court directed the government to submit a § 5K1.1 motion for approval to the Committee, the Committee, reviewing what Davis had done, decided the assistance he offered did not merit the filing of a substantial assistance motion. And the district court, having carefully regulated the Committee's decision process, found no evidence of improper motive in the decision the Committee reached. Indeed, Davis' failure to cooperate in the murder investigation provides a basis for the Committee's conclusion, whatever Davis' view that he had given enough already and should not be forced to go that far.

As to Davis' argument that the district court was independently empowered to grant a downward departure under § 5K2.0 in this situation, we rejected that argument in <u>Alegria</u>. <u>Accord</u> <u>Sandoval</u>, 204 F.3d at 285 (rejecting appellant's theory that § 5K2.0 provides a separate and independent basis under

-14-

which the district court can depart downward for substantial assistance) (citing rule in <u>Alegria</u>, 192 F.3d at 189).[6]

For these reasons, the judgment and sentence are <u>affirmed</u>.

---

[6] Davis' citation to <u>United States</u> v. <u>Khoury</u>, 62 F.3d 1138 (9th Cir. 1995) is of no assistance. We understand <u>Khoury</u> to posit that the remedy for a <u>Wade</u> violation could be either to compel the government to file a substantial assistance motion or to authorize the district court itself to depart downward if the government balks. <u>Id.</u> at 1141-43. Even if the second were a permissible remedy, the condition precedent for either remedy is missing here.