NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 7, 2015[*]
Decided April 8, 2015

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-3361

| | |
|---|---|
| JERMEL C. THOMAS, *Petitioner-Appellant*, | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | No. 3:12-cv-236 |
| UNITED STATES OF AMERICA, *Respondent-Appellee.* | Robert L. Miller, Jr., *Judge*. |

**O R D E R**

Jermel Thomas pleaded guilty to possessing a firearm as a felon. See 18 U.S.C. § 922(g)(1). He was sentenced to 120 months' imprisonment, the statutory maximum. We dismissed his direct appeal on the basis of the appeal waiver in his plea agreement. See *United States v. Thomas*, 639 F.3d 786 (7th Cir. 2011). Thomas has now moved under 28 U.S.C. § 2255 to attack collaterally his conviction and sentence. The district court

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See Fed. R. App. P. 34(a)(2)(C).

denied the motion but certified two issues for our review—ineffective assistance of counsel and judicial fact-finding. Thomas asks that we also certify for review three more issues. The district court correctly decided the two certified issues, and we decline to certify the other three. We therefore affirm the judgment of the district court.

Thomas was involved in a shootout in 2009, and he later pleaded guilty to possessing a firearm as a felon. A DNA test of a revolver recovered from the crime scene revealed Thomas's DNA on the trigger. Represented by Jay Stevens, a federal defender, Thomas signed a written plea agreement stating that he knowingly possessed the recovered revolver. Likewise, during his plea colloquy Thomas swore that he was guilty of possessing the gun. Thomas tells us now that, before he entered his guilty plea, Stevens had advised him that by pleading guilty his use of the gun during the shooting would not be an issue at sentencing. At the plea hearing, though, Thomas swore that he had received no sentencing predictions and he understood that, as the court had explained, the court could sentence him differently than he might expect, up to the statutory maximum of 10 years.

About a month after the plea was accepted, but before sentencing, Jay Stevens moved to withdraw as counsel because he had just learned of a conflict of interest: A fellow federal defender in the same office was representing another man involved in the shootout, and the two defenders had acquired information that would benefit one client at the expense of the other. The motion was granted, and William Stevens (no relation) was appointed to represent Thomas.

William Stevens represented Thomas at sentencing, where Thomas's use of the gun was litigated. The probation office recommended that Thomas's offense level be increased by four levels under U.S.S.G. § 2K2.1(b)(6) because Thomas had "used or possessed" a firearm in connection with "another felony." Counsel objected to the enhancement for two reasons. First, counsel argued that the proposed increase was unconstitutional because the felonies (state-law battery and criminal recklessness) were uncharged and unproven to a jury. Second, counsel contended, Thomas did not qualify for the enhancement because he did not commit another felony. Thomas testified at sentencing that someone had handed him a gun at the shootout, but he held it only momentarily before giving it back unfired. And a forensics consultant opined, from examining the residue on Thomas's jacket, that it was unlikely that Thomas had fired a gun. The government rebutted this evidence with a witness to the shootout who testified that Thomas had shot him, and by objecting to the forensic report because its author was not qualified and chain-of-custody problems with the jacket undermined the report's

conclusions. The district court admitted the report but disbelieved Thomas's assertion at sentencing that he had not fired the gun. The court then ruled that, because Thomas's sentencing testimony contradicted his plea-colloquy testimony by downplaying his responsibility for possessing the gun, the court would add two more offense levels for obstruction of justice, see U.S.S.G. § 3C1.1, in addition to the four-level enhancement under U.S.S.G. § 2K2.1(b)(6) for use or possession of a gun in connection with another felony. The enhancements pushed Thomas's guideline range up to a single point—the statutory maximum of 120 months, as allowed by U.S.S.G. § 5G1.1(a). That is the sentence he received.

On appeal from the district court's denial of the motion to vacate his sentence, we begin with the two issues that the district court certified. Thomas first argues that Jay Stevens rendered ineffective assistance when he advised Thomas that his use of a gun would not affect his sentence. The district court correctly observed, however, that an inaccurate sentencing prediction alone is not deficient performance, see *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996), and even if it were, prejudice is missing for two reasons. First Thomas acknowledged to the court that, despite any predictions Stevens may have made, Thomas understood that he could receive a sentence up to the 120-month statutory maximum. Second, the enhancement to his guideline range for obstruction was the result not of using the gun but of Thomas's decision to lie about it at the sentencing hearing. See *Wyatt v. United States*, 574 F.3d 455, 458–59 (7th Cir. 2009); *Bethel v. United States*, 458 F.3d 711, 718–19 (7th Cir. 2006); *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999).

Thomas replies that he is not challenging Stevens's forecast about the sentence's length. Rather, he is contesting Stevens's failure to warn him that the judge could find by a preponderance of evidence that he possessed or used the gun while committing a felony and then increase his sentence on that basis. Had Thomas received this advice, he concludes, he would not have pleaded guilty. But this gloss on Thomas's argument fares no better. Even if we assume that Jay Stevens should have told Thomas about judicial fact-finding at sentencing, Thomas must still furnish evidence that, with the correct advice, he would likely have proceeded to trial. See *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010); *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). He has not. To the contrary, the combination of his DNA on the gun and the witness who saw him use it constitutes "evidence proving the charged conduct"—possession of a firearm—and that evidence "was sufficient to ensure that no advantage would be gained by proceeding to trial." *United*

*States v. Rodriguez-Luna*, 937 F.2d 1208, 1214–16 (7th Cir. 1991). Accordingly Thomas has not shown prejudice.

We turn to the second certified issue. Thomas argues that the factual predicate for enhancing his guideline range—that he possessed or used a firearm while committing another felony—must, under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), be proven to a jury beyond a reasonable doubt. We have not yet ruled whether *Alleyne* applies retroactively to cases on collateral review, see *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013), though other circuits have ruled that it does not, see *Butterworth v. United States*, 775 F.3d 459, 465 & n.4 (1st Cir. 2015) (citing cases), *cert denied*, No. 14-8251, 2015 WL 459339 (U.S. Mar. 2, 2015). But as the district court correctly observed, we have ruled that *Alleyne* does not require that facts that merely increase an advisory guideline range, as happened here, be found by a jury. See *United States v. Volpendesto*, 746 F.3d 273, 296 n.8 (7th Cir. 2014); *United States v. Hernandez*, 731 F.3d 666, 672 (7th Cir. 2013). Accordingly, Thomas's second claim fails.

That brings us to the three requests to expand the certificate of appealability. First, Thomas contends that because of Jay Stevens's conflict of interest, he rendered ineffective assistance. Even if we assume that a conflict arose, the claim requires an additional showing. Either the conflict must have had an "adverse effect" on Jay Stevens's representation (a reasonable likelihood that Stevens's performance would have differed without the conflict), see *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Blake v. United States*, 723 F.3d 870, 880 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2830 (2014), or the conflict must have prejudiced Thomas (a reasonable probability that, with the conflict removed, Thomas would not have pleaded guilty), see *Hall v. United States,* 371 F.3d 969, 975–76 (7th Cir. 2004); *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003). But Thomas has offered no evidence of either. Stevens moved to withdraw as soon as he learned that he and his fellow defender possessed information that could undermine one of their clients. Therefore Stevens's advice to Thomas, all of which he rendered before the conflict emerged, was not affected by the conflict. Thomas replies with conclusory allegations of prejudice, but these are insufficient to show either an adverse effect or prejudice from the conflict. See *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005) (noting that petitioner must support assertion of prejudice with specific evidence); *Cieslowski*, 410 F.3d at 359 (same). He has thus failed to make "a substantial showing of the denial of a constitutional right." *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009).

Next, Thomas asks that we expand the certificate to include a claim that Jay Stevens rendered ineffective assistance by failing to communicate an earlier plea offer

that was more favorable than the one Thomas later accepted. The record contains no proof to support this allegation. Thomas has appended to his appellate brief (and he unsuccessfully asked the district court to add to the record) emails showing communications between Jay Stevens and the prosecutor discussing the possibility of a plea deal. But even if we could consider the emails, they do not contain the terms of an earlier plea offer, let alone a more favorable one. Accordingly, Thomas has not made a substantial showing of prejudice in the form of a more favorable outcome from an uncommunicated plea. See *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

The third issue that Thomas asks us to certify is whether Jay Stevens rendered ineffective assistance by advising him to plead guilty without having first done three things: interview certain witnesses, discuss with him a preliminary report (different from the one later admitted) that gunshot residue on Thomas's jacket was of uncertain origin, and preserve the jacket. To succeed on this claim, Thomas would have to show that, had Stevens taken these omitted steps, (1) a recommendation to plead not guilty would have been reasonable, see *Warren v. Baenen*, 712 F.3d 1090, 1097 (7th Cir. 2013); (2) Thomas would likely have accepted that recommendation, see *Hill*, 474 U.S. at 58–59; and (3) a not-guilty trial verdict would have been reasonably likely, see *id.* at 59. He has not. To begin, the record suggests that Stevens attempted to contact these witnesses, so Thomas's claim that Stevens's performance was deficient on this front is not substantiated. In any case Thomas cannot show prejudice. Acquittal was not reasonably likely because Thomas's DNA was found on the gun recovered at the crime scene (establishing possession) and another participant in the shootout testified at sentencing that Thomas shot him in the foot (confirming possession). Furthermore, no prejudice resulted from Stevens's failure to discuss the preliminary test results about the jacket. A completed forensic report was introduced at sentencing over the government's objections and it opined—in Thomas's favor—that it was unlikely Thomas fired a gun while wearing the jacket. Finally, because of the chain-of-custody problems with the jacket, preserving the jacket for additional testing likely would not have done Thomas any more good. Thus we decline to certify this issue.

Finally, Thomas argues that the district court should have held an evidentiary hearing on each issue he asks us to certify. But no material factual disputes arose to warrant an evidentiary hearing, so the district court did not abuse its discretion in declining to conduct one. *See Hutchings*, 618 F.3d at 699–700; *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002).

Accordingly, the district court's denial of Thomas's § 2255 motion is AFFIRMED, and his request to expand the certificate of appealability is DENIED.