In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 22-1934

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES FEARS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cr-00756-2 — **Virginia M. Kendall**, *Judge.*

_____

ARGUED APRIL 6, 2023 — DECIDED JUNE 22, 2023

_____

Before FLAUM, ST. EVE, and PRYOR, *Circuit Judges.*

FLAUM, *Circuit Judge.* According to Charles Fears, the plea agreement he signed to avoid the risk of multiple substantive sex-trafficking convictions is invalid because he received no benefit. Upon examination, consideration for the agreement abounds; the government made multiple concessions, not the least of which was permitting Fears to plead guilty to fewer counts, carrying lower mandatory minimums, than charged in the indictment. Since Fears's plea agreement included an

appellate waiver, we dismiss his appeal for lack of jurisdiction.

## I.    Background

Fears was charged by superseding indictment with one count of conspiracy to commit sex trafficking under 18 U.S.C. § 1594(c) and four substantive counts of sex trafficking under 18 U.S.C. § 1591(a), (b)(1). The four § 1591(b)(1) counts carry fifteen-year mandatory minimums. Instead of going to trial, Fears pleaded guilty to a superseding information charging him with one count of conspiracy to commit sex trafficking under § 1594(c) and one substantive count of sex trafficking— this time under § 1591(a), (b)(2). Section 1591(b)(2), in contrast to (b)(1), carries a ten-year mandatory minimum.

As part of the plea agreement, Fears admitted to the factual bases of the charges, which, in short, were controlling women and underage girls through force, fraud, and coercion; requiring them to perform commercial sexual acts; and taking almost all their profits for himself and his partner in the sex-trafficking scheme. For its part, the government agreed to (1) dismiss the original and superseding indictments (with their additional, more severe charges) after Fears was sentenced; (2) move for a one-point reduction for acceptance of responsibility under Sentencing Guideline § 3E1.1(b) if, at sentencing, the court determined Fears was eligible for a two-point reduction under § 3E1.1(a); and (3) in its discretion, move under Federal Rule of Criminal Procedure 35(b) for a reduction in Fears's sentence, provided Fears offered substantial assistance in investigating or prosecuting another person after his sentencing.

The plea agreement included a broad appellate waiver through which Fears agreed to relinquish his "right to appeal his conviction … and any part of [his] sentence[,] … including any term of imprisonment." The only exceptions were that Fears could attack his conviction on the basis of "involuntariness or ineffective assistance of counsel" and seek to reduce his sentence if there were changes to the applicable law.

Over two years after Fears pleaded guilty, but before he was sentenced, he filed a series of *pro se* motions to withdraw his plea. Fears claimed his guilty plea was not knowing and voluntary because of ineffective assistance of counsel, asserting, among other things, that his attorney pressured him to plead guilty. In a related motion to dismiss the indictment, he also accused his sex-trafficking victims of wrongdoing, calling them liars and asserting that they should be prosecuted as co-defendants.

The district court rejected Fears's attempt to unwind his guilty plea. In doing so, it scrutinized the plea colloquy where Fears affirmed, time and again, that he understood the charges and potential sentence; that his attorneys explained the charges and answered all his questions; and that he had no complaints about his representation. In the end, the court found no evidence to support Fears's motions—just his self-serving assertions.

Fears's case proceeded to sentencing. The court calculated the recommended sentence under the Sentencing Guidelines, which was life in prison. His total offense level was forty-eight—"off the charts" of the Guidelines, which top out at forty-three. The government argued for a below-the-Guidelines sentence of thirty years, and Fears's attorney countered with a sentence of approximately ten years—matching the

mandatory minimum sentence on the § 1591(b)(2) conviction. The court ultimately imposed a sentence of thirty years on both the conspiracy and substantive counts, running concurrently.

The government did not move for the additional point reduction under Guideline § 3E1.1(b); at sentencing the court found Fears was not eligible for a reduction under § 3E1.1(a) because, in his motion to dismiss the indictment, he blamed his victims instead of accepting responsibility. After sentencing, the indictments were dismissed on the government's motion. However, the government never moved for a substantial-assistance reduction in Fears's sentence under Rule 35(b). This appeal ensued.

## II.    Discussion

"We review *de novo* the enforceability of an appellate waiver in a plea agreement." *United States v. Bridgewater*, 995 F.3d 591, 594–95 (7th Cir. 2021). However, "an appellate waiver 'stands or falls with the rest of the bargain.'" *United States v. Sakellarion*, 649 F.3d 634, 639 (7th Cir. 2011) (quoting *United States v. Whitlow*, 287 F.3d 638, 640 (7th Cir. 2002)). Consequently, where a defendant, like Fears, claims his plea agreement with an appellate waiver is void for lack of consideration, "our starting point is the plea agreement." *See United States v. Kilcrease*, 665 F.3d 924, 927 (7th Cir. 2012). If there was consideration, the claim is barred by the appellate waiver.[1]

---

[1] Fears did not present his lack-of-consideration argument to the district court, so we would normally review it for plain error. *United States v. Dridi*, 952 F.3d 893, 898–99 (7th Cir. 2020) (explaining that we review arguments for plain error where the litigant's failure to raise the argument before the district court rings "more inadvertent than intentional").

"[A]lthough they are unique in the sense that they are ne-gotiated, executed, approved, and enforced in the context of a criminal prosecution that affords the defendant a due pro-cess right to fundamental fairness, [plea agreements] are con-tracts nonetheless." *United States v. Smith*, 759 F.3d 702, 706 (7th Cir. 2014). To be enforceable, there must be consideration. *See Kilcrease*, 665 F.3d at 928. Consideration need not "be bro-ken down clause-by-clause, with each promise matched against a mutual and 'similar' promise by the other side" though; courts examine "the overall consideration given for the plea." *United States v. Hare*, 269 F.3d 859, 861–62 (7th Cir. 2001).

The government argues that it made multiple valuable concessions sufficient to support the plea agreement: It per-mitted Fears to plead guilty to fewer, lesser charges; dis-missed the remaining, more severe charges; and gave Fears the opportunity to receive a reduced sentence through both a one-point reduction for acceptance of responsibility under Guideline § 3E1.1(b) and a Rule 35(b) motion for substantial assistance following his sentencing.

To begin with, allowing a defendant to plead guilty to less severe charges is a benefit that supports the plea agreement, especially where the government dismisses the more severe charges. *See id.* at 861. The superseding information to which Fears pleaded guilty dropped all four § 1591(b)(1) charges in

---

However, the government's failure to argue forfeiture on appeal means we can nevertheless review the argument de novo. *See United States v. Grif-fith*, 344 F.3d 714, 718 (7th Cir. 2003); *United States v. Rahman*, 805 F.3d 822, 831 (7th Cir. 2015).

the indictment—carrying fifteen-year mandatory mini-mums—in exchange for a single § 1591(b)(2) charge—carry-ing a ten-year mandatory minimum. Nonetheless, Fears presses that, in his particular circumstance, the government's concession was illusory because it afforded no ultimate bene-fit: His total offense level even after the plea to the lesser charge was still "off the charts" such that the Guidelines rec-ommended life in prison.

We disagree. Pleading guilty to the superseding infor-mation gave Fears a tangible benefit. His attorney was able to—and did—argue at sentencing for a ten-year sentence, matching the mandatory minimum for the § 1591(b)(2) count. Absent that concession, the lowest sentence he could have ad-vocated for was fifteen years, the mandatory minimum under § 1591(b)(1).

Fears argues that because the "[G]uidelines were life [in prison]" there was "no chance whatsoever that" the ten-year mandatory minimum mattered. But the Sentencing Guide-lines are advisory, not binding, and in any event, the district court did not follow them. While the thirty-year sentence the court imposed was higher than the one Fears's attorney advo-cated for, it was also substantially lower than the life sentence that the Guidelines recommended. At bottom, there is no ba-sis to conclude that Fears's ability to argue for a ten-year sen-tence was illusory.

Fears also deems illusory the government's conditional promise to move for a reduction in his sentence under Guide-line § 3E1.1(b) and Rule 35(b). But the fact that the govern-ment did not do so is not evidence of an illusory promise. It is evidence that conditions triggering the government's obliga-tions did not occur. The court did not find Fears qualified for

the two-point reduction under § 3E1.1(a) in the first place because he had not accepted responsibility for his actions (and instead blamed his victims), and Fears did not provide substantial assistance in investigating or prosecuting another person, as required under Rule 35(b). The government's promises are not rendered illusory simply because those conditions never came to pass—particularly since satisfaction of the conditions was at least partially in Fears's control. *Cf. United States v. Thomas*, 639 F.3d 786, 788 (7th Cir. 2011) (enforcing an appellate waiver because the government's promise "to recommend a downward adjustment for acceptance of responsibility" constituted consideration even though the government did not follow through after the defendant "offer[ed] an implausible denial of the facts of his crime"); *United States v. Hallahan*, 756 F.3d 962, 973 (7th Cir. 2014) (holding the government did not need to recommend leniency, as promised in plea agreement, where defendants "failed to accept responsibility for their crimes" by fleeing the state "to avoid sentencing" because "[t]he law does not require the government to make a nonsensical recommendation").

Relatedly, the government's promise to consider moving under Rule 35(b) for a reduction in Fears's sentence is also not illusory simply because the government had discretion over whether to file a substantial-assistance motion. It is true that "[w]ords of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise." Restatement (Second) of Contracts § 77 cmt. a (1981). But just because the thing of value (here, the potential for the government to file a Rule 35(b) motion) is uncertain does not make it illusory consideration.

We reached that conclusion in very similar circumstances in *Kilcrease*, 665 F.3d at 927–28. There we evaluated whether "the government's promise to consider moving for a reduced sentence" (under 18 U.S.C. § 3553(e)) was a benefit constituting consideration for Kilcrease's plea agreement and appellate waiver. *Id.* While the government promised to consider moving for a reduction if Kilcrease offered "substantial assistance in the investigation or prosecution of other criminal offenses," ultimately it declined to make the motion because Kilcrease's "assistance had not led to any arrests or charges." *Id.* at 926–27. Although there is "prosecutorial discretion inherent in evaluating and deciding whether and how to reward a defendant's cooperation," we held it does not "render a plea agreement invalid." *Id.* at 928. This logic applies equally to Fears's case.

Hearing *Kilcrease*'s death knell for his argument, Fears calls it bad law and claims the cases it relies on do not support its conclusion. Despite arising in different factual scenarios, *Wade v. United States*, 504 U.S. 181 (1992), *United States v. Billings*, 546 F.3d 472 (7th Cir. 2008), and *United States v. Emerson*, 349 F.3d 986 (7th Cir. 2003), stand for the background principle that the government's discretionary decision to not file a substantial-assistance motion is still reviewable in certain circumstances. *See Wade*, 504 U.S. at 185–86 ("[A] defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion … because of" "an unconstitutional motive" or if the "refusal … was not rationally related to any legitimate Government end."); *see also Billings*, 546 F.3d at 476–77; *Emerson*, 349 F.3d at 988.

*Kilcrease* then relies on a Third Circuit case to extend the concept to plea agreements, where the defendant receives

greater protections by virtue of contract law principles. *United States v. Isaac*, 141 F.3d 477, 481–82 (3d Cir. 1998). *Isaac* establishes that when the government's commitment to consider filing a substantial-assistance motion is memorialized in a plea agreement, the prosecutor is bound by the contractual obligation of good faith—even where the plea agreement gives the government "sole discretion." *Id.* at 483–84 (explaining that because plea agreements are contracts and the parties have an implied duty of good faith and fair dealing, the government's decision not to file such a motion must be "based on an honest evaluation of the assistance provided and not on considerations extraneous to that assistance" (citing Restatement (Second) of Contracts § 205)). What Fears misapprehends is that the prosecutor's "promise to evaluate *in good faith*" the propriety of the substantial-assistance motion—along with the possibility of judicial redress if the prosecutor does not—constitutes sufficient consideration for the agreement. *Kilcrease*, 665 F.3d at 928 (emphasis added). Because the decision to file a substantial-assistance motion is not entirely discretionary, the prosecutor's promise to consider bringing a substantial-assistance motion is not illusory. *Id.*

In sum, the government offered ample consideration for Fears's plea. The fact that Fears never benefited from some of the government's conditional promises "does not render his plea agreement unenforceable." *Thomas*, 639 F.3d at 788.

### III.    Conclusion

For the reasons explained, we DISMISS Fears's appeal.